| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------X<br>FUTURE REALTY MANAGEMENT, LLC<br>and MLQ REALTY MANAGEMENT, LLC<br><br>                Plaintiffs,<br><br>                vs.<br><br>NATIONAL GRANGE MUTUAL INSURANCE<br>COMPANY<br><br>                Defendant.<br>-----------------------------------------------------------X | JUDGE ROBINSON<br>07 CV 11528<br><br>Docket No.:<br><br><br>**COMPLAINT**<br><br><br><br>**PLAINTIFFS DEMAND<br>TRIAL BY JURY** |

Plaintiffs, FUTURE REALTY MANGEMENT, LLC and MLQ REALTY MANGEMENT, LLC, by way of their Complaint against the defendant, NATIONAL GRANGE MUTUAL INSURANCE COMPANY ("defendant"), hereby says:

### I. THE PARTIES

1. At all times hereinafter mentioned, plaintiff FUTURE REALTY MANAGEMENT, LLC ("FUTURE"), was and still is a domestic limited liability company, organized and existing under and by virtue of the laws of the State of New York.

2. At all times hereinafter mentioned, plaintiff MLQ REALTY MANAGEMENT, LLC ("MLQ") was and still is a domestic limited liability company, organized and existing under and by virtue of the laws of the State of New York.

3. At all times hereinafter mentioned defendant NATIONAL GRANGE MUTUAL INSURANCE COMPANY ("defendant") was and still is a foreign Corporation, organized under and by virtue of the laws of the State of Florida, with its principal place of business located in the

State of New Hampshire. At all times hereinafter mentioned, defendant was licensed and authorized by the Superintendent of Insurance to issue policies of insurance in the State of New York, including the policy issued to FUTURE and MLQ herein.

## II. JURISDICTION

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the plaintiffs and the defendant and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## III. VENUE

5. The venue of this matter is proper in this district under 28 U.S.C. §1391(a)(2) because the events giving rise to plaintiffs' claim took place in the Southern District of New York, and the property that is the subject of this action is located there.

## IV. THE POLICY

6. Prior to October 12, 2005, for good and valuable consideration, defendant issued a policy of insurance bearing number BPV30755, with effective dates of coverage from September 23, 2005 through September 23, 2006 (hereinafter referred to as "the Policy"), which policy insured the premises located at 465-469 Main Street, Poughkeepsie, New York (hereinafter referred to as "the subject premises") against all risks of loss, with the exception of those specifically limited or excluded.

## V. BACKGROUND FACTS RELEVANT TO ALL CAUSES OF ACTION

7. At all relevant times, FUTURE was the title owner of the subject premises.

ABRAHAM, LERNER
& ARNOLD, LLP
ATTORNEYS AT LAW
292 MADISON AVENUE, 22ND FLOOR
NEW YORK, NEW YORK 10017

8. At all times hereinafter mentioned, FUTURE maintained an insurable interest in the subject premises insured by the Policy.

9. The Policy specifically provides that the plaintiffs must cooperate with the defendant in the investigation of the claim, and submit to examinations under oath as reasonably required.

10. On July 13, 2006, September 21, 2006, October 11, 2006, December 12, 2006, December 19, 2006 and March 29, 2007, plaintiffs submitted documentation to defendant in response to requests that were made.

11. On January 26, 2007, May 21, 2007, June 20, 2007, October 1, 2007, December 12, 2007 and December 13, 2007, plaintiffs appeared at examinations under oath.

12. Notwithstanding plaintiffs' absolute cooperation, defendant has repeatedly threatened to disclaim coverage on grounds of failure to cooperate.

13. In a letter dated November 14, 2006, counsel for defendant wrote, regarding plaintiffs obligations to produce documents:

- Your client's failure to retain records or his inability to locate them, does not relieve him of his obligation to secure copies and forward them to his insurance company;

- Your client's failure to retain records or inability to locate them does not relieve him of his obligation to secure copies and forward same promptly;

- Furthermore, since these items are being demanded pursuant to an insurance contract, and not in accordance with any court proceeding, whether some of these items may be public record is irrelevant. It is MLQ's responsibility to track them down, not its carrier;

ABRAHAM, LERNER
& ARNOLD, LLP
ATTORNEYS AT LAW
292 MADISON AVENUE, 22ND FLOOR
NEW YORK, NEW YORK 10017

- It is difficult to believe that the broker who has first hand knowledge of this loss and was present at the time it occurred is not cooperating with Mr. Quinones. However, if that is the case, you have at your disposal the legal means necessary to secure those records on your client's behalf, and I would encourage you to do so immediately;

14. Neither the Policy nor the decisional caselaw on the issue require that an insured take the steps outlined in counsel's letter to obtain requested documentation.

15. Furthermore, it was not until the fifth session of examinations under oath that questions were asked regarding the actual loss giving rise to the claim.

16. Topics covered at the examinations under oath have included things as unrelated as transactions involving other properties owned by the principals of plaintiffs; repairs made to other properties owned by the principals of plaintiffs; bank records and bank statements for a taxi cab company owned by the principals of plaintiffs; tenants and leases for other premises owned by the principals of plaintiffs; repairs made to the premises years prior to the loss; and tenants who have entered into leases at the subject premises subsequent to the loss.

17. By requesting that plaintiffs take extraordinary steps to obtain requested documentation, and by inquiring into topics that are wholly irrelevant to the issues of the claim, Defendant has abused its rights under the policy.

18. Plaintiffs believe that defendant is attempting to manufacture a defense of failure to cooperate to avoid payment of its legitimate claim.

19. Nonetheless, plaintiffs will continue to provide documentation in response to

requests made by defendant as best they can, and will make themselves available for additional examinations under oath.

20. Furthermore, the Policy specifically provides that defendant will advise plaintiffs of the manner in which it will tender loss payment within thirty (30) days of defendant's receipt of a sworn statement in proof of loss.

21. Defendant received plaintiffs' sworn statement in proof of loss on October 27, 2006.

22. At no time since October 27, 2006 has defendant advised plaintiffs of its election of the manner of loss payment.

## VI. PLAINTIFFS' FIRST CAUSE OF ACTION
### (Breach of Contract)

23. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in preceding paragraphs numbered "1" through "22," inclusive, with the same force and effect as though more fully set forth herein at length.

24. On or about October 12, 2005, while the Policy was in full force and effect, the subject premises were extensively damaged by water and its effects.

25. The cause of the October 12, 2005 water damage loss to the subject premises is neither limited nor excluded in the Policy.

26. Subsequent to the loss of October 12, 2005, plaintiffs submitted a claim to defendant seeking to be indemnified for the damages sustained to the subject premises as the

ABRAHAM, LERNER
& ARNOLD, LLP
ATTORNEYS AT LAW
292 MADISON AVENUE, 22ND FLOOR
NEW YORK, NEW YORK 10017

result of a covered peril and pursuant to the terms of the Policy.

27. Defendant has failed to indemnify plaintiffs for the damages sustained to the subject premises, despite the fact that same has been duly demanded.

28. Defendant's failure to indemnify plaintiff for the damages sustained to the subject premises by virtue of the October 12, 2005 loss constitutes a breach of contract.

29. Defendant's actions in insisting that plaintiffs undertake extraordinary steps to obtain documents not within their control, and the requirement that plaintiffs appear at multiple examinations under oath, which inquired into areas well beyond the scope of what was material to defendant's investigation of the claim, constitutes an abuse of defendant's rights under the policy and, concomitantly, a breach of contract.

30. Defendant's failure to timely advise plaintiffs of the manner of its election of loss payment constitutes a breach of contract.

31. As a result of defendant's breach of contract, plaintiffs have been damaged in the sum of at least $249,818.87, with the precise amount to be determined at the trial of this action.

### VI. PLAINTIFF'S SECOND CAUSE OF ACTION
(Reformation)

32. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "31", inclusive, with the same force and effect as though more fully set forth herein at length.

33. At all relevant times, FUTURE was the owner of the subject premises

ABRAHAM, LERNER
& ARNOLD, LLP
ATTORNEYS AT LAW
292 MADISON AVENUE, 22ND FLOOR
NEW YORK, NEW YORK 10017

34. On October 12, 2005, the subject premises were damaged by water and its effects.

35. At the time of the October 12, 2005 water damage loss, the named insured under policy number BPV30755 issued by defendant with respect to the subject premises was MLQ and not FUTURE, the title owner of this building.

36. By issuing its policy of insurance, defendant manifested an intention to insure the subject premises against all risks of loss, including damage caused by water and its effects.

37. The identification of MLQ as the named insured on the policy issued by defendant with respect to the subject premises, and the failure to have properly identified FUTURE as the named insured for this building was an error.

38. The failure of FUTURE to be identified as the owner of the subject premises, and to be properly named on the policy issued by defendant was not the result of any concealment or intent to deceive on the part of plaintiffs or their broker.

39. The failure of FUTURE to be properly named on the policy issued by defendant with respect to the subject premises was a unilateral mistake, which pursuant to the decision of the Second Department in Court Tobacco Stores v. Great Eastern Insurance Company, 43 A.D.2d 561, 347 N.Y.S.2d 8 (2nd Dept. 1973), is deemed mutual for purposes of reformation.

40. The failure of FUTURE to be properly named on the policy issued by defendant was a mutual mistake.

41.   Consequently, plaintiffs respectfully request that the policy of insurance be reformed to correctly identify FUTURE as the named insured with respect to the subject premises, retroactive to the issuance date of the policy.

WHEREFORE, plaintiffs demand judgment against defendant: (1) on their First Cause of Action in the sum of at least $249,818.87, with the precise amount to be determined at the trial of this action; and (2) on their Second Cause of Action for reformation of the policy number BPV30755 issued by defendant, correctly identifying FUTURE as the named insured with respect to the subject premises, retroactive to the issuance date of the policy, with interest thereon from October 12, 2005, altogether with the costs and disbursements of this action.

Dated: New York, New York
       December 21, 2007

> Yours, etc.
>
> ABRAHAM, LERNER & ARNOLD, LLP
> Attorneys for Plaintiff
>
> By_____
>      Johnathan C. Lerner (JL 5754)
> 292 Madison Avenue, 22nd Floor
> New York, New York 10017
> (212) 686-4655